U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 JUN -2  P 3: 50

CLERK
BY
DEPUTY CLERK

STATE OF VERMONT                          WINDHAM SUPERIOR COURT
WINDHAM COUNTY, SS.                       DOCKET NO.:

JOYCE ANN WALKER                  *
      Plaintiff,               *
                                  *
v.                                *
                                  *
C&S WHOLESALE GROCERS, INC.,      *
and DAVID MARTINEAU               *
      Defendants.             *

## COMPLAINT

NOW COMES Plaintiff, Joyce Ann Walker, by and through her attorneys, Thomas W. Costello, P.C., and complains against Defendants, C&S Wholesale Grocers, Inc., and David Martineau in this following manner:

1. Plaintiff is a resident of Westminster, County of Windham and State of Vermont.

2. Defendant C&S Wholesale Grocers, Inc. (C&S) is a Vermont Corporation with an office and place of business in Brattleboro, Vermont.

3. Defendant David Martineau is a resident of Marlborough, New Hampshire and at all times material hereto was an employee, agent and servant of C&S and was acting within the scope of his authority from C&S.

4. In 1996 Plaintiff applied for a position as an hourly employee with Defendant C&S.

5. During the time of her employment application and subsequent interview Plaintiff informed Martineau that she had recently undergone back surgery and was restricted as to the amount of weight that she could lift.

6. Plaintiff was advised by Martineau that he and C&S would

THOMAS W. COSTELLO, P.C.
51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO, VERMONT
05302
802-257-5533
fax: 802-257-4289

accommodate Plaintiff's lifting restriction.

7. On or about September 4, 1996 Defendants hired Plaintiff as breakfast cook in the Brattleboro, Vermont cafeteria.

8. During the time of her employment with C&S, Plaintiff was a loyal and productive worker who performed her job faithfully.

9. During the time of her employment with C&S, Plaintiff had an expectation of continued employment with C&S and she justifiably relied on that expectation.

10. After Plaintiff commenced work for C&S and prior to June of 2002 Plaintiff regularly received pay increases and promotions for her work, consistently received annual review ratings stating that she exceeded expectations in her job performance, and was otherwise recognized by the Defendants for her excellence and her contributions to her employer.

11. On or about May 22, 1997 Plaintiff was promoted to the position of cafeteria manager and became a salaried employee at an annual salary of $26,000 per year.

12. At that time Plaintiff's immediate supervisor was David Martineau. He suggested that Plaintiff should hire a male worker as a replacement for her former position vacancy and made statements to Plaintiff that male workers were preferable to female workers because male workers were able to lift more and that men tended to stay longer because they had more financial responsibilities for their families. Plaintiff informed Martineau that his suggestion was unlawful.

13. Plaintiff's informing her supervisor that his suggestion was unlawful

IAS W. COSTELLO, P.C.
51 PUTNEY ROAD
P.O. BOX 483
TTLEBORO, VERMONT
05302

802-257-5533
ax: 802-257-4289

was undertaken as a duty to her employer and in consideration of the best interests of C&S and without any gain or advantage to herself and with no thought and no consideration of the same.

14. In July of 1997 C&S hired a male worker, Stephen Forestier, for a position of cafeteria manager, a position similar to Plaintiff's position and requiring similar, but not identical, skill and effort and performed under similar working conditions. However, Plaintiff's position had more responsibility than did Forestier's.

15. Said Forestier was paid a starting salary that was greater than Plaintiff's salary despite the fact that Plaintiff had been then an employee of C&S for a longer period of time and the responsibility she bore was greater than that of Forestier.

16. At that time, Plaintiff asked her immediate supervisor, Martineau, about the discrepancy in salaries between herself and said Forestier.

17. Martineau failed to justify the discrepancy in salaries.

18. The discrepancy continued and on or about April of 1999 Plaintiff consulted with C&S's Personnel Affairs manager Mitch Davis regarding the discrepancy in salaries between Plaintiff and said male worker in light of the facts that Plaintiff continued to have more responsibility than Forestier, her longevity with C&S exceeded that of said Forestier, and her performance ratings were superior.

19. C&S's Personnel Affairs manager failed to justify the discrepancy in salaries.

20. C&S's Personnel Affairs manager Mitch Davis resigned from C&S. The discrepancy continued and on or about August of 2000 Plaintiff consulted with

OMAS W. COSTELLO, P.C.
51 PUTNEY ROAD
P.O. BOX 483
BRATTLEBORO, VERMONT
05302

802-257-5533
fax: 802-257-4289

C&S's Vice President of Human Resources Bill Arkinbark regarding the discrepancy in salaries between Plaintiff and said male worker.

21. Arkinbark failed to justify the discrepancy in salaries.

22. Bill Arkinbark resigned from C&S and on or about September of 2000 and Plaintiff then consulted with C&S's Chief Executive Officer Richard Cohen regarding the discrepancy in salaries between Plaintiff and said male worker.

23. Plaintiff was subsequently contacted by C&S's Vice President of Human Resources Karen Rocheleau regarding the discrepancy in salaries between Plaintiff and said male worker.

24. Karen Rocheleau failed to justify the discrepancy in salaries.

25. Karen Rocheleau resigned from C&S, the discrepancy continued and on or about February of 2001 Plaintiff consulted with C&S's Senior Vice President of Human Resources Charlotte Edwards regarding the discrepancy in salaries between Plaintiff and said male worker.

26. Edwards failed to justify the discrepancy in salaries.

27. On or about April of 2001 Plaintiff consulted with C&S's Human Resources manager Harold Sullivan regarding the discrepancy in salaries between Plaintiff and said male worker.

28. Sullivan failed to justify the discrepancy in salaries.

29. On or about June 1, 2001 Plaintiff received an annual review performance rating that stated that her job performance 'exceeded expectations' and she received a raise in salary but still below the salary of said male worker Stephen Forestier.

)MAS W. COSTELLO, P.C.

51 PUTNEY ROAD
P.O. BOX 483
RATTLEBORO, VERMONT
05302

802-257-5533
fax: 802-257-4289

30. At this time Plaintiff's duties were similar to those of the said male worker Stephen Forestier however she continued to have more responsibility and that responsibility included her checking the work of said Forestier.

31. Defendant Martineau recognized that Plaintiff's complaints were justified, refused to take any action to redress the inequity and commenced a course of treatment of Plaintiff designed to terminate Plaintiff for and on account of her request for equal and fair treatment and which ultimately resulted in her discharge on August 25, 2003.

32. Such treatment included but is not limited to the following:

a. On or about August 12, 2001 Martineau denied Plaintiff cafeteria kitchen access and instructed her to stay in the office and not participate in safety reward cookouts for the Grocery Department and for the Freezer Department and that he would run the kitchen. Martineau credited the receipts from those events to Forestier.

b. On or about August 13, 2001 Martineau criticized Plaintiff for not following up on kitchen duties even though he had denied her kitchen access and taken on the responsibilities himself. Martineau advised Plaintiff that she should look for another job because he could no longer work with her.

c. On or about December 1, 2001 Martineau instructed Plaintiff that she would be required to work on the two days of the company Christmas party. Plaintiff was the only food service manager required by Martineau to work both days.

d. Martineau rated Plaintiff poorly at her June 2002 annual performance review and showed Plaintiff e-mail messages that he purported to have issued

⊃MAS W. COSTELLO, P.C.

51 PUTNEY ROAD
P.O. BOX 483
RATTLEBORO, VERMONT
05302

802-257-5533
fax: 802-257-4289

5

regarding her job performance. Martineau refused to give Plaintiff copies of said messages.

  e. Martineau issued several unjustified and unsupported written warnings to Plaintiff over the period between December 2002 to August 2003.

  f. On or about January 2, 2003 Martineau summoned Plaintiff to a meeting with himself and C&S's workers compensation supervisor Jon Glende.

  g. Said Glende informed Plaintiff that Martineau would no longer extend reasonable accommodation of Plaintiff's doctor limited restriction of lifting no more than 20 lbs., and Plaintiff was further informed that she had 30 days to find another job in C&S or else she would be terminated.

  h. As a pretext Plaintiff's supervisor David Martineau attempted to discharge Plaintiff by denying her reasonable accommodation of her doctor limited restriction of lifting no more than 20 lbs.

  i. On or about January 7, 2003 Plaintiff delivered to Glende a doctor's evaluation allowing Plaintiff to lift up to 50 lbs. Plaintiff's immediate supervisor David Martineau was informed of the doctor's evaluation and Martineau responded with an offensive remark to Plaintiff.

  j. Said Martineau later did not allow Plaintiff to have any assistance, as was past practice, when unloading pallets and lifting and putting up orders.

  k. Martineau proceeded to engage in a series of harassing, retaliatory, demeaning, contradictory, and punitive work related activities toward Plaintiff.

33.  The foregoing constituted a pretext for termination and created a hostile work environment coupled with harassment and discrimination resulting from

MAS W. COSTELLO, P.C.

51 PUTNEY ROAD
P.O. BOX 483
ATTLEBORO, VERMONT
05302

802-257-5533
fax: 802-257-4289

Plaintiff's concerns regarding gender related disparate treatment.

34. Defendants terminated Plaintiff's employment on August 25, 2003.

35. Defendants' conduct was malicious, wanton, willful, and outrageous.

36. Plaintiff conducted a thorough job search after her wrongful discharge but was not able to secure employment which would replace her salary and employee benefits.

37. Plaintiff currently operates a lunch truck for lengthy hours with no established income and without medical and other benefits.

38. As a result of this wrongful action by Defendants, Plaintiff suffered lost wages during her employment with C&S and has endured lost wages since her termination in addition to suffering the loss of participation in the corporate medical plan, retirement benefits, insurance benefits, and anticipated future earnings.

39. Based on past salary increases and the resolved commitment on the part of Plaintiff to continue as an employee of C&S until her retirement eligibility Plaintiff's lost wages after discharge exceed the sum of $125,000.00.

40. Plaintiff's injuries and damages are continuing and are permanent.

## COUNT ONE

## WRONGFUL DISCHARGE

41. Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42. Defendants employed Plaintiff pursuant to an enforceable contract.

43. Defendants' discharge of Plaintiff was retaliatory, discriminatory, and a breach of said contract.

)MAS W. COSTELLO, P.C.

51 PUTNEY ROAD
P.O. BOX 483
RATTLEBORO, VERMONT
05302

802-257-5533
fax: 802-257-4289

44. As a foreseeable and proximate result of the same, Plaintiff was injured and damaged as more fully set forth in paragraphs 38, 39, and 40.

## COUNT TWO

## DISCRIMINATION

45. Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

46. Defendants hired and employed a male worker at a higher wage than Plaintiff for equal work in jobs requiring similar skills, effort, and responsibility under similar conditions

47. Plaintiff was subjected to a hostile work environment, disparate treatment, and discrimination based on seemingly small incidents; criticized more harshly; scrutinized more closely; which in aggregate created an environment of hostility and discrimination.

48. Defendants' employer/employee relationship with Plaintiff was conducted in an unfair, hostile and disparate manner based on her gender.

49. As a foreseeable and proximate result of the same, Plaintiff was injured and damaged as more fully set forth in paragraphs 38, 39, and 40.

## COUNT THREE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff hereby alleges and incorporates by reference paragraphs 1 through 49 as though fully set forth herein.

51. Defendants' conduct was extreme and outrageous.

52. Defendants' conduct was done intentionally or with reckless disregard

AS W. COSTELLO, P.C.
51 PUTNEY ROAD
P.O. BOX 483
TLEBORO, VERMONT
05302

802-257-5533
x: 802-257-4289

8

of the possibility of causing emotional distress to Plaintiff.

53.   As a foreseeable and proximate result of the conduct, Plaintiff suffered extreme emotional distress and was injured and damaged as more fully set forth in paragraphs 38, 39, and 40.

WHEREFORE, Plaintiff demands judgment against the Defendants and such compensatory damages in an amount sufficient to compensate Plaintiff for her injuries and damages and punitive damages in such an amount as will punish Defendants for their malicious conduct and be an example to others, together with interest, costs, expenses, and attorney's fees.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury on all claims.

DATED at Brattleboro, County of Windham and State of Vermont, this 9th day of May 2005.

THOMAS W. COSTELLO, P.C.
Attorneys for Plaintiff

BY: _Thomas W. Costello_
Thomas W. Costello, Esq.

AS W. COSTELLO, P.C.
51 PUTNEY ROAD
P.O. BOX 483
ITLEBORO, VERMONT
05302
802-257-5533
ax: 802-257-4289

H:/Walker/pleadings/complaint/mk